# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JAMMY DEMOND BELL,     :
AIS 168174,

                        :

     Petitioner,

                        :

vs.                               CA 07-0605-WS-C

                        :

GRANT CULLIVER,

                        :

     Respondent.

## REPORT AND RECOMMENDATION

Jammy Demond Bell, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of his November 5, 2003 second-degree receiving stolen property conviction in the Circuit Court of Washington County, Alabama. On December 16, 2003, Bell was sentenced to twenty-five (25) years imprisonment under Alabama's Habitual Felony Offender Statute. Petitioner's conviction and sentence were affirmed on appeal by the Alabama Court of Criminal Appeals on June 25, 2004, by unpublished memorandum opinion. *Bell v. State*, 919 So.2d 1240 (Ala.Crim.App. 2004) (table). Petitioner's application for rehearing was denied on July 16, 2004, *Bell*

*v. State*, 920 So.2d 609 (Ala.Crim.App. 2004) (table), and, on January 14, 2005, the Alabama Supreme Court denied Bell's petition for writ of certiorari, *Ex parte Bell*, 924 So.2d 800 (Ala. 2005) (table). Petitioner filed a Rule 32 petition in the Circuit Court of Washington County, Alabama collaterally attacking his conviction and sentence on February 25, 2005. The trial court denied the petition on September 6, 2006, following an evidentiary hearing. On February 23, 2007, the Alabama Court of Criminal Appeals affirmed the denial of Bell's Rule 32 petition. Petitioner's application for rehearing was denied by the Alabama Court of Criminal Appeals on March 16, 2007 and, on July 27, 2007, the Alabama Supreme Court denied Bell's petition for writ of certiorari, *Ex parte Bell*, ___ So.2d ___, 2007 WL 2152903 (Ala. 2007).

In his petition before this Court, filed August 27, 2007, Bell raises the following grounds which he claims entitle him to relief:

(1) trial counsel was ineffective (a) in failing to object and establish a prima facie case with respect to the prosecutor's peremptory strikes in accordance with *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (b) in failing to challenge for cause a potential juror who did not reside in the county and district where the crime occurred; (c) in failing to object to the trial court administering the oath to the petit jury; (d) in failing to

request and object to the lack of jury instructions regarding Bell's statement to Officer Vanessa Barnett that was admitted into evidence; (e) in failing to object to the trial court having improper contact with the jury; (f) in failing to advise Bell of the advantages and disadvantages of taking the witness stand; (g) in failing to object to the use of prior convictions during sentencing; and (h) in failing to inform petitioner of the risks of proceeding *pro se*;[1]

(2) appellate counsel was ineffective (a) in failing to challenge the trial court's denial of a continuance; and (b) in failing to preserve and raise in a motion for new trial his claims of ineffective assistance of trial counsel;[2]

(3) he was deprived of his Sixth and Fourteenth Amendment rights by the trial court's action in rendering judgment and imposing a sentence without establishing venue;

(4) the oath to the petit jury was not administered in the manner prescribed by Alabama law thereby depriving petitioner of his Fourteenth Amendment rights; and

(5) the sentence imposed exceeded the maximum authorized by law.

---

[1]     Petitioner actually lists each ground of ineffective assistance of trial counsel separately in the petition, listing these issues as grounds one through eight. (*See* Doc. 1)

[2]     Petitioner raises these claims as grounds nine and ten of his petition. (*See* Doc. 1)

The respondent has admitted that the instant petition has been timely filed (Doc. 8, at 9) and that petitioner has exhausted his state court remedies (*see id*.). Respondent does claim, however, that this Court is procedurally barred from reaching the merits of Bell's claims of lack of venue and the failure to properly administer the oath to the petit jury and that petitioner has failed to establish that the decisions of Alabama's state courts regarding the remaining issues were contrary to federal law or an unreasonable application of the law to the facts of his case. This case is ripe for a decision by this Court.

This cause is before the Court on the petition and respondent's answer, with attachments. A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required.

## FINDINGS OF FACT

1.     On August 28, 2003, Bell was indicted on one count of receiving stolen property in the second degree in violation of § 13A-8-18 of the Code of Alabama. (Doc. 8, Exhibit A, INDICTMENT) Petitioner was arraigned on this charge on September 17, 2003, appearing with counsel and entering a not guilty plea. (Doc. 8, Exhibit A, Case Action Summary Sheet; *see also* Doc. 8,

Exhibit A, Transcript of Proceedings on September 17, 2003, at 7-11)

2.      On October 20, 2003, the trial court granted defense counsel's motion to withdraw to the extent that he was relieved of being "trial counsel." (Doc. 8, Exhibit A, Transcript of Proceedings on October 20, 2003, at 14; *see also* T.T. 24 ("Ben Kelly, an attorney practicing before the bar in the First Circuit has been appointed by the Court to be advisory counsel to Mr. Bell.")) However, the court instructed counsel that he would "be on call to assist Mr. Bell at any appropriate time when either called on by Mr. Bell or by the Court." (*Id*. at 14-15; *see also id*. at 15 ("On that, you are not required by the Court to file any motion or take any other action except sit by him and give assistance when called on.")) Bell informed the trial court that he required no assistance. (*Id*. at 15) "I don't want nobody sit by me. I had rather have nobody sit by me but my own counsel, me." (*Id*.)  However, after the striking of the jury and the denial of Bell's *Batson* challenge to the striking of two black jurors (T.T. 34-36), petitioner requested that Ben Kelly, Esquire be allowed to serve as his attorney in the trial of the case as opposed to serving in an advisory capacity (T.T. 42); the court granted this request (T.T. 43).

> MR. KELLY: Judge, Mr. Bell has informed me he wishes me to do the opening statement in his case, and also asked me to write a motion to dismiss and motion to suppress. And there needs to be some determination as to my roll in the

case, as far as, am I now back [as] the attorney of record, fully, or am I just going to do [the] opening? I just need to know.

THE COURT: Let me just ask Mr. Bell. Now, Mr. Bell at the settlement docket you indicated that you did not wish to have an attorney to represent you, and even overruled the Court when the Court advised you that Mr. Kelly would be required to stay in this case as advisory counsel to you, and he would not participate in the trial unless you called upon him.

Do you now wish Mr. Kelly to represent you in this matter[?]

MR. BELL: Yes, Your Honor.

THE COURT: Is that what you want to do?

MR. BELL: Yeah.

THE COURT: Any objection by the State?

MR. KEAHEY: Yes, sir I feel that the defendant, by doing this, has now put Mr. Kelly in a position of going forward with a case I don't think he can be prepared to try, therefore, giving the defendant the opportunity of suing Mr. Kelly at the conclusion of the case if he is convicted, whereas under an advisory capacity, the standard for Rule 32 is totally different. As far as I have been able to understand the law is virtually nonexistent. If he gets him in at this time, the first motion Mr. Kelly will have to ask for is a . . . continuance, and we're ready to go forward.

THE COURT: Anything else by Mr. Bell?

MR. BELL: No, sir. I object to his –

THE COURT: I  know you're going to object to his

6

objection. Anything concrete?

       MR. BELL: I am legally allowed to have an attorney represent me; knowing, competent attorney. As such, he was the original attorney in this case, and I . . . feel like I know he represent me to the best of his knowledge in this case.

       THE COURT: All right. Let me state for the record  that the defendant has put himself in this position of having counsel who was[], initially in an advisory status, who has done no trial preparation, as far as subpoenaing witnesses or other things because of the defendant's insistence he would represent himself in this trial.

       Therefore, I'm going to allow Mr. Kelly to participate fully in the trial to the extent of a regular attorney in the case, with the understanding, for the record, that Mr. Bell has placed you in that position without any fault of your own in this case.

       MR. KELLY: Yes, sir. Judge, I would move for a continuance based on the fact I am not ready.

       THE COURT: Denied.

(T.T. 42-44; *see also* T.T. 44-45 ("Ladies and gentlemen, there has been a slight change of plan in this case. Mr. Kelly has, up to this point, been advisory counsel to Mr. Bell, the defendant in this case. From this point, Mr. Bell has asked the Court to allow Mr. Kelly to participate fully in the case as attorney of record for the defendant. And the Court has allowed that. Mr. Kelly will be participating from this point."))

      3.      During the trial, Patrick Thomas, an associate minister at Faith

Temple Holiness Church in August of 2002, testified that the church owned a PA system, more specifically an amplifier and speakers, and that he never gave Bell the permission to possess this equipment. (T.T. 46-49) The equipment was stolen from the church's revival tent which was located in Washington County, Alabama. (*See* T.T. 50-52) The day after this equipment went missing in August of 2002, Thomas reported the crime to the authorities. (*See* T.T. 49)[3] Thomas admitted on cross-examination that he did not see Bell take the equipment nor did he ever see the equipment in Bell's possession. (T.T. 53) However, it is clear from Thomas' testimony that the witness did go to the defendant (his cousin) and talk to him about the missing equipment. (T.T. 50)

4. Timothy Lofton testified that in August of 2002 Bell offered to sell him some speakers for $50.00. (*See* T.T. 55-59) When Lofton showed no interest in buying the speakers (T.T. 59), Bell paid Lofton gas money and tried to sell the speakers first in Mount Vernon (*id*.) and then in Saraland (T.T. 59-60). According to Lofton, Bell sold the speakers to a guy in a parking lot outside of a pawn shop in Saraland. (T.T. 60) In addition, Lofton identified the amplifier taken from the Faith Temple Holiness Church's revival tent as being

---

[3] Thomas estimated the value of the equipment as being $900.00. (T.T. 51)

in Bell's possession. (T.T. 80)

5.     In his own defense, Bell denied receiving any stolen property and denied ever meeting, much less knowing, Timothy Lofton. (T.T. 85-86) Bell admitted that he had two prior felony convictions, one for second-degree robbery and the other for third-degree burglary. (T.T. 89; *see also* T.T. 90 ("Were you guilty of those offenses? [] Yes, I was. That's the reason I didn't take it to trial, I pleaded guilty to it. I was wrong. And this why I took this to trial, I am not guilty."))

6.     In rebuttal, Vanessa Barnett testified that Bell told her that he found the stereo equipment in the woods and took it and sold it. (T.T. 99; *see also* T.T. 106 (Chief Mike Barnett's testimony that Bell told him that "he did not steal the amplifier equipment from the church, but he found it in the woods next to the tent. States he took it to town and sold it."))[4]

---

[4]         MR. KELLY: Judge, I renew my objection that anything said by Vanessa Barnett be excluded because, previously, the Court has already ruled that those statements which are very similar to the statements made to Officer Barnett, Mike Barnett, would be excluded because they have not been provided to the defense. It's the same statement.

        THE COURT:         Response by the State for the record.

        MR. KEAHEY:        Under Rule 16.1, the only statements the State intends to offer are discoverable to the defendant. We didn't have them. We should have had them, though. Mr. Barnett had them. We did not know about them until today. They were properly excluded by the

7.      Bell made a closing statement over his attorney's advice that it would not be in his best interests to make a closing argument. (*See* T.T. 117) During his closing, Bell told the jury that he was actually guilty of theft of property as opposed to receiving stolen property. (*See* T.T. 129 ("[A]t my client's insistence, he wants me to renew a motion to dismiss the indictment based on the fact that he is charged with receiving stolen property, and he testified in closing that he is actually guilty of theft of property."); T.T. 140 ("I feel like that I should be charged with something that I did do, and receiving stolen property is something I did not do. And I testified at trial that I was guilty of stealing the property, but the owner of the property never pressed any charges on me."))

8.      The petit jury found Bell guilty of second-degree receipt of stolen property on November 5, 2003. (T.T. 134; *see also* T.T. 134-135 (jury was polled regarding its guilty verdict))

9.      Bell was sentenced to twenty-five (25) years imprisonment on

---

Judge. The defendant chose to take the stand, chose to make those statements admissible in rebuttal.

THE COURT:         The objection is noted and overruled. The statements are admissible for the purpose offered by the State.

(T.T. 100-101)

December 16, 2003. (T.T. 137-146; *see* T.T. 144-145( "[T]he Court finds that you should be sentenced in this case to a period of twenty-five years confinement in the State penitentiary."))

10.     Petitioner filed a direct appeal from his conviction and sentence in the Alabama Court of Criminal Appeals. (*See* Doc. 8, Exhibit B) Bell raised two issues on direct appeal: (1) the trial court erred in denying his motion for judgment of acquittal at the close of the State's case-in-chief; and (2) the trial court erred in allowing the prosecution to introduce the substance of an incriminating oral statement given by him to law enforcement personnel because same was not disclosed to the defense prior to trial. (*Id*. at 2) The Alabama Court of Criminal Appeals affirmed Bell's conviction and sentence by unpublished memorandum opinion entered on June 25, 2004. *Bell v. State*, 919 So.2d 1240 (Ala.Crim.App. 2004) (table).

> The evidence adduced at trial indicated the following. Patrick Thomas, the former associate minister at Faith Temple Holiness Church in Washington County, testified that the Church was holding a tent revival in early August of 2002. According to Thomas, who stated that he and Bell are first-cousins, an amplifier and speakers turned up missing on August 1, 2002. Thomas testified that he reported the stereo equipment missing the following day; he further stated that he spoke with Bell about the stereo equipment, but that the stereo equipment was never returned. According to Thomas, Bell did not have title or permission to possess the speakers or amplifier; Thomas further stated that he never authorized Bell to sell them at a

pawn shop. Thomas stated that the speakers and amplifier had been purchased a few weeks earlier, and that the value of the speakers was $300 and the value of the amplifier was $600.

Timothy Lofton testified that he was an acquaintance of Bell's. According to Lofton, Bell approached him in August of 2002 and offered to sell him a speaker for $50. Lofton stated that he accompanied Bell to the woods and saw a large box speaker that Lofton characterized as a 15, a term which he stated indicated the size of the speaker. Lofton stated that he told Bell that he did not want to purchase the speaker. According to Lofton, Bell put the speaker and an amplifier in Lofton's truck; gave him some gas; and asked if he could drive him to Mount Vernon. Lofton stated that when they arrived in Mount Vernon, Bell went into the barber shop and attempted to sell the stereo equipment there; according to Lofton, the man at the barber shop stated that he did not want to buy them but that he would buy them later. Lofton testified that Bell then asked Lofton to drive him to Saraland; that Bell tried to pawn the stereo equipment at a pawn shop in Saraland but could not because he did not have his identification; that Bell tried to get him to pawn the stereo equipment in [Lofton's] name but that he refused; and that Bell sold the stereo equipment to an individual in the parking lot of the pawn shop for $200. Lofton denied any involvement in the taking of the stereo equipment or having ever possessed the stereo equipment.

Michael Barnett, Chief of the McIntosh Police Department, and his wife, Vanessa, who was apparently employed by some law-enforcement agency in Washington County, both testified as rebuttal witnesses. They said that Bell had requested to speak with them; that Bell was seeking to gain leniency in the stolen-property case by providing information on an unrelated capital-murder case, and that he made admissions to them about the stolen-property case. According to Vanessa, Bell told [her] he knew what had happened was wrong, that he had gotten the [stereo equipment]. At the time he didn't know it was stolen. He had found it at the edge of the woods in a dump

or something. He took it and got rid of it. He sold it. Chief Barnett testified that Bell stated that he did not steal the amplifier equipment from the church, but he had found it in the woods next to the tent. [He] [s]tated he took it to town and sold it.

## I.

Bell contends that the evidence was insufficient to sustain his conviction because, he says, the only evidence connecting him to the crime was the uncorroborated testimony of Lofton who, Bell argues, was an accomplice.

Section 12-21-222, Ala. Code 1975, states:

A conviction of [a] felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.

In Gavin v. State, [Ms. CR-99-1127, Sept. 26, 2003] ___ So.2d ___ (Ala. Crim. App. 2003), this Court stated:

Before § 12-21-222 is invoked, it must clearly appear that the witness is an accomplice, and it is the defendant's burden to prove that a witness is an accomplice, unless the evidence shows without dispute that the witness is an accomplice. Whether a witness is an accomplice may be a question of law or fact, depending upon the circumstances of the case. When there is a doubt or dispute concerning the complicity of a witness and the testimony is susceptible to different inferences on that point, the question [of whether the witness is an accomplice] is for the

13

jury. When a witness denies willing participation in the crime charged against the defendant, the issue of his being an accomplice is a question of fact for the jury.

___ So.2d at ___.

In Cumbo v. State, 368 So.2d 871 (Ala. Crim. App. 1978), this Court stated:

Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for determination by the trial court. But where there is doubt or dispute whether a witness is in fact an accomplice, the question is for the jury and not the trial court. Where the issue of whether the state's witness was an accomplice is for the jury, the denial of the accused's motion to exclude the state's evidence for lack of corroboration is not error.

368 So.2d at 876-877.

Here, Lofton presented conflicting testimony as to at what point he began to believe that the stereo equipment was stolen. Lofton testified that Bell approached him and offered to sell him a speaker; that Bell took him to a location in the woods where the stereo equipment was located; that he declined to purchase the speaker; that he took Bell to two different communities where Bell attempted to sell the stereo equipment; that he declined to pawn the stereo equipment in his name as Bell did not have any identification; and that he was present when Bell sold the stereo equipment to a man in the parking lot of a pawn shop. According to Lofton, he was not charged with any crime related to the stereo equipment, but he did talk to the police and fill out a police report. We also note the following exchange at trial:

[Defense Counsel]: You went with him to sell it; is that correct?

[Lofton]: Yes, sir.

[Defense counsel]: Why did you go with him if you knew it was stolen?

[Lofton]: I didn't know it was stolen at th[at] time.

[Defense counsel]: At what point did you know it was stolen?

[Lofton]: When he tried to sell it for cheap.

[Defense counsel]: Let me ask you this: You mean to tell me that my client is charged with an offense that you participated in and knew – you knew it was stolen whenever you said it was offered at a cheaper price, correct?

[Lofton]:  Yeah.

[Defense counsel]: What did you do at that point?

[Lofton]: I told him I didn't want to buy it.

[Defense counsel]: You went on with him to another place, did you not?

[Lofton]: I didn't know it was stolen then.

[Defense counsel]: At what point did you know it was stolen?

15

[Lofton]: When he tried to get me to pawn it in my name.

Later, the following exchange occurred:

[Defense counsel]: All right. The truth is you knew, at the time you saw those speakers in the woods, they were stolen, didn't you?

[Lofton]: (No response)

[Defense counsel]: Let me remind you you are under oath today.

[Lofton]: Not really, He said they was his, he didn't have nowhere to put them.

There was conflicting evidence as to whether Lofton was an accomplice in the charged offense; thus, Bell's motion for a judgment of acquittal was properly denied. Therefore, Bell is not entitled to any relief on this claim.

## II.

Bell contends that the trial court erred in allowing the State to introduce evidence of an oral statement he allegedly made to law enforcement that was not provided to him prior to trial.

As noted previously, during the State's case-in-chief, the State called Chief Barnett to testify. When Chief Barnett began to testify about a conversation he had [] with Bell in December of 2002, Bell objected and the trial court heard arguments outside of the hearing of the jury. Chief Barnett revealed to the trial court that [a]t one point Mr. Bell stated to me, he stated that he did not steal the amp equipment from the church, but he had found it in the woods and took it to town and sold it. Bell's

initial grounds of objection were that the statement was made as part of a settlement negotiation and that the testimony was prejudicial and irrelevant; the trial court overruled the objection, the jury was brought back into the courtroom, and the trial resumed. Chief Barnett answered affirmatively when asked if Bell made a statement regarding the amplifier and speaker; the prosecutor then asked what Bell had told Chief Barnett, Bell objected and the following exchanged then occurred outside of the hearing of the jury:

> [Defense counsel]: Judge, I object unless he said he had made a statement. Is there a written statement he made? It hasn't been produced to us.

> THE COURT: All right. Response.

> [Prosecutor]: Yes, sir. The response is it's not signed or written. [Chief Barnett] has it.

> [Defense counsel]: If it's written down and any type of admission, then the defendant is entitled to it. We're entitled to that in discovery, Judge. If we had not been provided that in discovery, it's to be excluded. It cannot be presented in court.

> THE COURT: Response by the State.

> [Prosecutor]: I thought that was what the suppression hearing was about, Judge. He had it.

> [Defense counsel]: We have not been provided this in discovery. . . . Judge, says statements of defendant: None.

> [Prosecutor]: I don't have one in my file. That's fine.

17

THE COURT: The objection is sustained.

The state concluded its case-in-chief without any further mention of Bell's alleged statements.

However, Bell testified on his own behalf, and denied knowing, meeting with, or offering to sell Lofton the stereo equipment. He further denied any knowledge of or having ever been in possession of the stereo equipment. On cross-examination, Bell denied telling Chief Barnett or Vanessa Barnett that he was in possession of the stereo equipment.

The State then called Vanessa Barnett as a rebuttal witness; Bell objected on the ground that any testimony regarding alleged statements he had made had not been provided to him. The State argued that the testimony was rebuttal and admissible for impeachment; that Rule 16.1 only required the production of statements the State intended to use at trial; that it was being used in rebuttal; and that [o]nce he took the stand, surely he should have known we're going to use it at that time if he denied it. The trial court overruled Bell's objection.

Vanessa Barnett then testified that Bell initiated the discussion, that Bell stated that he wanted to make a deal in his case in exchange for testimony regarding a capital murder, and that Bell told me he knew what had happened was wrong, that he had gotten the [stereo equipment]. At the time he didn't know it was stolen. He had found it at the edge of the woods in a dump or something. He took it and got rid of it. He sold it.

During Vanessa's testimony -- outside of the hearing of the jury -- Bell again renewed his objection to the testimony of his statements to law enforcement. The trial court again overruled the objection. Bell requested that the jury be instructed that the statements were only admissible to impeach his credibility and were not to be considered as substantive evidence of his guilt; the trial court informed the parties that that matter would be discussed at the charge conference to be held

later that day.

Chief Barnett was also recalled and testified, over objection, that Bell had stated to him that he did not steal the amplifier equipment from the church, but he had found it in the woods next to the tent. Stated he took it to town and sold it.

Rule 16.1, Ala.R.Crim.P., provides, in pertinent part:

(a) <u>Statements of Defendant</u>. Upon written request of the defendant, the prosecutor shall, within fourteen (14) days . . .

(2) Disclose the substance of any oral statements made by the defendant, before or after arrest, to any law enforcement officer, official, or employee which the state/municipality intends to offer in evidence at the trial.

Rule 16.5 provides, in pertinent part:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; may grant a continuance if requested by the aggrieved party; may prohibit the party from introducing evidence not disclosed; or may enter such order as the court deems just under the circumstances.

In <u>Minnis v. State</u>, 690 So.2d 521 (Ala. Crim. App. 1996), this Court found that a statement by the defendant to police officers should have been disclosed to defense counsel before trial; however, this Court stated:

The appellant did not seek a continuance or request a recess. As we noted in <u>McLemore v. State</u>, 562 So.2d 639, 645 (Ala. Cr. App. 1989):

> Under the circumstances presented here, . . . it appears that either a recess or continuance would have been sufficient to protect the appellant's interests and permit him to review and evaluate this particular evidence in the same manner as had he received this information prior to trial. Having failed to make any showing to the contrary and having failed to request either a continuance or recess, the appellant cannot claim error on the part of the trial court in denying his request to exclude the evidence.

690 So.2d at 527.

In <u>Pettway v. State</u>, 607 So.2d 325 (Ala. Crim. App. 1992), this Court stated:

> This Court has repeatedly stated that it views the failure to comply with the discovery principles embodied in Rule 16, A.R.Crim.P. [] with particular disfavor and condemnation. We have also made it clear, however, that not every violation of Rule 16 requires the suppression of the undisclosed evidence. Instead, Rule 16.5 gives a trial judge a number of options to consider in imposing sanctions on a party who has failed to comply with the court's discovery order.
>
> []

20

>       Whether and to what extent a trial court
> imposes sanctions for non-compliance with Rule
> 16 rest within the sound discretion of the court.

607 So.2d at 330-31. In <u>McLemore v. State</u>, 562 So.2d 639 (Ala. Crim. App. 1989), this Court stated:

>       This court is aware that the Alabama
> Supreme Court has, in two cases, held that the
> prosecutor's failure to comply with a Rule 1[6] []
> discovery order mandated a reversal. Both of
> these cases, however, involved the failure to
> provide extrajudicial statements of the defendant
> and apparently involved facts from which the
> Supreme Court concluded that a reversal was the
> only sanction which would accomplish the goals
> of the discovery rules. We note that neither of
> those cases contained any discussion of the other
> sanctions for nondisclosure contained in Rule . .
> . [16.5] We, therefore, find those cases
> distinguishable from the case at bar.

562 So.2d at 646.

   We find it unnecessary in this case to decide whether the State's failure to disclose the contested testimony violated Rule 16, as Bell contends. Here, Bell offered no explanation as to how he was prejudiced by the timing of the State's disclosure of the substance of the statement. There is no allegation in Bell's brief on appeal, and there is no indication in the record, that Bell was denied the opportunity to negotiate a plea with the State or that he declined any plea offer by the State based on his lack of knowledge about the statement. Bell learned of the statement outside of the hearing of the jury during the State's case-in-chief and the trial court refused to allow the State to introduce the testimony at that time. Then, during the defense's presentation of its case, when the State attempted to elicit the testimony in

response to Bell's testimony, the trial court conducted a thorough hearing on Bell's motion to suppress before the evidence was ever presented to the jury. Bell did not seek a recess after learning of the substance of the statement, and he was allowed to conduct a thorough cross-examination of Chief Barnett and Vanessa regarding the statement and the circumstances surrounding the statement. Bell sought only the most extreme remedy -- suppression of the evidence. Although he later sought a limiting instruction from the trial court, it does not appear that he ever received an adverse ruling on that request; rather, the trial court stated that the limiting instruction would be discussed in the charge conference. The charge conference is not included in the record on appeal; further, Bell did not object to the lack of a limiting instruction after the trial court's oral instructions to the jury. Thus, we conclude that the trial court's rulings did not constitute an abuse of that court's discretion.

For these reasons, we find no error in the trial court's ruling on Bell's motion to suppress the statement.

Based on the foregoing, the judgment of the trial court is affirmed.

(Doc. 8, Exhibit D (most internal citations and quotation marks omitted; footnotes omitted)) Bell's application for rehearing (Doc. 8, Exhibit E) was overruled by the Alabama Court of Criminal Appeals on July 16, 2004 (Doc. 8, Exhibit F). Bell's petition for writ of certiorari (Doc. 8, Exhibit G) was denied by the Alabama Supreme Court on January 14, 2005 (Doc. 8, Exhibit H).

11.     Bell filed a Rule 32 petition in the Circuit Court of Washington

County, Alabama collaterally attacking his conviction and sentence on February 25, 2005. (Doc. 8, Exhibit I) In his brief in support of the Rule 32 petition, Bell asserted that he was deprived of his constitutional right to effective assistance of trial and appellate counsel; that the trial court was without jurisdiction to render judgment or impose sentence; and that the sentence imposed exceeds the maximum authorized by law. (Doc. 8, Exhibit I, Grounds In Support of Petition For Post Conviction Relief Pursuant to Rule 32)

12.     The trial court conducted an evidentiary hearing on August 4, 2006. (Doc. 8, Exhibit I, Transcript of Rule 32 Proceedings) During this proceeding, petitioner reiterated his closing argument admission that he took the property, as opposed to receiving stolen property. (*See* Tr. 22 ("And the owner said he never pressed any charges on me and advised Nick Reed he didn't want to press no charges on me, and told everybody else not to press charges on me, leave the issue alone, he was going to let God handle it. I admitted to him I had tooken (sic) the property. And I told Ben Kelly that.") Tr. 36 & 37 ("But he [Timothy Lofton] knew it was stolen, or taken by me, or could have known. It was evidence where he could have known or should have known. And he went with me to sell it. . . . I was actually guilty of stealing the

property instead of receiving stolen property."); Tr 41 ("False convict me,
make sure I be false convicted for receiving, something I didn't do. I didn't
receive no property, I stole the property, it was on my own land. I took it.");
*cf.* Tr. 99 (petitioner's trial counsel, Ben Kelly, testified that Bell's "contention
through the whole trial[] was that they could not convict him of receiving
stolen property because he was the one that stole it."))[5] On September 6, 2006,
the trial court entered the following order denying Bell's Rule 32 petition:

> Prior to the presentation of testimony, the Petitioner was
> required to give notice to the Court of all the claims he was
> alleging. The majority of the allegations involved a claim of
> ineffective assistance of counsel. The Petitioner's counsel at trial
> was Ben Kelly. Specifically, the Petitioner alleged that his trial
> counsel: (1) failed to establish a prima facie Batson challenge;
> (2) failed to challenge a juror due to the juror allegedly being a
> Mobile County resident; (3) failed to object to the trial court
> administering the oath to the jury rather than the circuit clerk;
> (4) failed to request jury instructions on the issue of statements
> made by the Petitioner; (5) failed to object to the trial court's
> alleged improper contact with the jury; (6) failed to advise the
> Petitioner of the disadvantages of taking the witness stand; [and]
> (7) failed to object to the use of prior convictions during
> sentencing.
>
> The Petitioner also alleged that his appellant (sic) counsel
> was ineffective for the following reasons: (8) appellant (sic)
> counsel failed to raise the issue on appeal concerning the trial
> court's denial of the Petitioner's motion to continue[;] and[] (9)

---

[5]    Bell testified that Faith Temple Holiness Church was a church in Mount Vernon,
Alabama which is located in Mobile County (Tr. 29-30) but admitted on cross-examination that
the church had set up a tent for a revival on his property in Washington County (Tr. 46-48).

appellant (sic) counsel failed to raise the issue of trial counsel's ineffective assistance of counsel.

In addition, the Petitioner also alleged that the trial court committed the following errors: (10) the trial court was without jurisdiction because venue was not established; (11) the sentence exceeded the maximum provided by statute; (12) the trial court allowed the Petitioner to proceed without being informed of the risk of proceeding pro se; (13) that the trial court should have given a jury instruction concerning an alleged accomplice; (14) the trial court failed to dismiss the indictment[;] and[] (15) the state failed to prove value of the stolen property as contained in the indictment.

In regard to the Petitioner's claim of ineffective assistance of counsel, specifically, the allegation that trial counsel failed to establish a prima facie Batson challenge based on racially biased questions asked by the prosecutor, the Court is of the opinion that said allegation is due to be denied. During the jury selection process, Petitioner was acting pro se pursuant to his own request. The Honorable Ben Kelly was only advisory counsel at the time the jury was selected. As such, any failure to establish a prima facie Batson challenge was without fault of trial counsel. Furthermore, the court is of the opinion that the alleged racially biased questions referred to by the Petitioner are common questions used during voir dire, and as such, a prima facie Batson challenge would not have been established.

In regard to the Petitioner's claim of ineffective assistance of counsel in that his trial counsel failed to challenge juror Roy Lee Barnes because, allegedly, Mr. Barnes is a Mobile County resident, the Court is of the opinion that said allegation is due to be denied. During the jury selection process, the Petitioner was acting pro se. Furthermore, based on the evidence presented, the trial court is of the opinion that said juror is a

resident of Washington County, Alabama.[6] As such, the allegation is without merit.

In regard to the Petitioner's claim of ineffective assistance of counsel in that trial counsel failed to object to the trial court administering the oath to the jury, the Court is of the opinion that said allegation is due to be denied. Rule 18.5 of the Alabama Rules of Criminal Procedure provides for the trial court to administer the oath to the jury.

In regard to the Petitioner's claim of ineffective assistance of counsel in that trial counsel failed to request jury instructions on the issue of statements made by the Petitioner, the Court is of the opinion that said allegation is due to be denied. The Petitioner failed to establish any prejudicial effect of the lack of said request. In addition, the court is of the opinion that any such limiting instruction would have been ineffective due to the Petitioner's own closing argument in which he admitted to the jury that he stole the items in question.

In regard to the Petitioner's claim of ineffective assistance of counsel in that trial counsel failed to object to allegedly improper contact with the jury, the Court is of the opinion that said allegation is due to be denied. The Petitioner failed to establish any prejudicial effect of any alleged contact or that any such contact prejudiced the verdict.

In regard to the Petitioner's claim of ineffective assistance of counsel in that trial counsel failed to advise the Petitioner of the disadvantages of taking the witness stand, specifically regarding the use of prior convictions, the Court is of the opinion that said allegation is due to be denied. The Court is of the opinion that the Petitioner was adequately aware of the risk of taking the witness stand. The Court is also of the opinion that the Petitioner took the stand pursuant to a strategy that he

---

[6]     The evidence at the Rule 32 hearing established that Barnes was a resident of Calvert, Alabama. (Doc. 8, Exhibit I, Tr. 50) Calvert is in Washington County, Alabama.

formed. During his testimony, the Petitioner attempted to show that in his two prior convictions he was guilty and therefore, pled guilty. It appeared to the Court that the Petitioner tried to convince the jury that since he did not plead guilty in this case, that he was not guilty. As such, the Petitioner's allegation is without merit.

In regard to the Petitioner's claim of ineffective assistance of appellate counsel in the (sic) failed to raise on appeal an issue regarding the trial court's denial of a motion to continue, the Court is of the opinion that said allegation is due to be denied. Prior to trial, the trial court held two colloquies with the Petitioner regarding the trial of his case and his representation by trial counsel. Pursuant to said colloquies, the trial Court informed the Petitioner that his case would be tried on the specific date. As such, the Court is of the opinion that the denial of the motion to continue was not an abuse of discretion. Therefore, the Petitioner's allegation is without merit.

In regard to the Petitioner's claim of ineffective assistance of appellate counsel in that counsel failed to raise on appeal the issue of ineffective assistance of [trial] counsel, the Court is of the opinion that said allegation is due to be denied. Specifically, the Court is of the opinion that trial counsel provided sufficient representation to the Petitioner. Furthermore, during the hearing on the petition, appellate counsel for the Petitioner, Glenn Davidson, Esquire, testified, based on his experience and his review of the trial transcript, trial counsel for the Petitioner did a sufficient job in his representation and therefore, he did not feel it was a legitimate issue to be raised. As such, this allegation is without merit.

In regard to the Petitioner's claim that the trial court was without jurisdiction because venue was improper or not established, the Court is of the opinion that said allegation is due to be denied. Based on the evidence offered at trial and based on the testimony elicited from the Petitioner during the hearing on his petition, the court is of the opinion that venue was proper in

27

Washington County. As such, the allegation is without merit.

In regard to the Petitioner's claim that the court imposed a sentence which exceeds the maximum provided by law, the Court is of the opinion that said allegation is due to be denied. The Petitioner received a twenty-five year sentence. Pursuant to the Alabama Habitual [Felony] Offender Act, a conviction of a class C felony with two prior convictions provides for a term of imprisonment for life of for any term not more than ninety-nine years but not less than fifteen years. As such, the allegation is without merit.

In regard to the Petitioner's claim that the trial court erred in allowing the Petitioner to proceed pro se without informing him of the risks, the Court is of the opinion that said allegation is without merit. On two occasions this court conducted a colloquy with the Petitioner regarding his legal representation. As such, the allegation is due to be denied.

In regard to the Petitioner's claim that the trial court erred by having inappropriate contact with the jury, the Court is of the opinion that said allegation is without merit. The Petitioner has failed to establish how any alleged contact with the jury was prejudicial. Therefore, said allegation is without merit.

In regard to the allegation that the trial court erred in not instructing the jury concerning the testimony of an alleged accomplice, the Court is of the opinion that said allegation is without merit. Specifically, the Petitioner argued that the trial court should have given an instruction regarding the testimony of Timothy Lofton. The Petitioner claims that Mr. Lofton was an accomplice and therefore, the jury should have been informed of such. Mr. Lofton testified at trial and was subjected to a lengthy cross[-]examination by trial counsel regarding his involvement with the Petitioner which sufficiently revealed any bias or motivation that the witness may have had. As such, the allegation is without merit.

28

In regard to the allegation that the trial court erred in failing to dismiss the action because there was no victim, the Court is of the opinion that said allegation is without merit. Based on the evidence presented at trial, the property at issue was owned by Faith Temple Holiness Church. Furthermore, the evidence revealed that the Petitioner did not have permission to possess said property. Therefore, the allegation is without merit.

In regard to the allegation that the trial court erred in failing to dismiss the action because the state failed to sufficiently prove value, the Court is of the opinion that said allegation is without merit. During the trial, the state proved value by their witness, Patrick Thomas, in which he stated he had purchased the items in question for approximately nine hundred dollars. As such, said allegation is without merit.

It is the ORDER of this Court that the Petitioner's Rule 32 petition should be and is hereby denied.

(Doc. 8, Exhibit I, ORDER)

13.     The Alabama Court of Criminal Appeals affirmed the trial court's denial of Bell's Rule 32 petition by unpublished memorandum decision. (Doc. 8, Exhibit L) That opinion reads, in relevant part, as follows:

To prevail on an ineffective-assistance-of counsel claim, the appellant must show that his counsel's performance was deficient and that counsel's deficient performance prejudiced him. See Brown v. State, 663 So.2d 1028 (Ala. Crim. App. 1995) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In its order denying the petition, the circuit court found as follows:[7]

---

[7]     Because this Court has previously set forth the trial court's decision, almost in its entirety, it will not do so again.

.     .     .

The record supports the circuit court's findings, and we adopt them as part of this memorandum.

With regard to Claim 3, we also note that the appellant was acting pro se at the time the jury was sworn. Therefore, he is not entitled to relief as to this claim.

With regard to Claim 5, the appellant argues that his trial counsel rendered ineffective assistance when he did not object on the ground that the jury had sent a written question to the trial court. However, he did not establish that trial counsel knew about the question. In his original petition, he asserted that the trial court did not consult with him or with his trial counsel about the question. During the evidentiary hearing, the appellant merely asserted that, "I was not aware of it, but my lawyer probably was." Therefore, the appellant has not shown that his counsel's performance was deficient in this regard. Accordingly, he did not satisfy his burden of pleading and proof with regard to this claim. See Rules 32.3 and 32.6(b), Ala.R.Crim.P., and Strickland.

With regard to Claim 7, the certified copies of the appellant's previous convictions contain indications that he was in fact represented by counsel during those proceedings. However, during the evidentiary hearing, the appellant testified that, in his previous cases, he had dismissed his attorneys and represented himself. Even taking the appellant's testimony at the evidentiary hearing as true, it appears that he waived his right to counsel in the previous cases. Therefore, those convictions were properly used to enhance his sentence. Accordingly, trial counsel did not render ineffective assistance in this regard.

Finally, with regard to Claim 10, the appellant was sentenced on December 16, 2003. However, the record on appeal was not certified as complete until January 27, 2004.

30

> [I]n any cases in which the defendant is convicted after the date this opinion is released, an ineffective-assistance-of-counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b), Ala.R.Crim.P., expires, in order for that claim to be properly preserved for review upon direct appeal.

> []

> When a defendant makes a claim of ineffective assistance of trial counsel, and that claim cannot reasonably be presented in a new trial motion filed within the 30 days allowed by Rule 24.1(b), Ala.R.Crim.P., the proper method for presenting that claim for appellate review is to file a Rule 32, Ala.R.Crim.P., petition for post-conviction relief.

In this case, appellate counsel did not have access to the record on appeal in time to raise ineffective-assistance-of-trial-counsel claims within 30 days after the appellant was sentenced. Therefore, appellate counsel did not render ineffective assistance in this regard.

For these reasons, the appellant was not entitled to relief on his ineffective-assistance-of-counsel claims.

## II.

The appellant also argues that the trial court did not have jurisdiction to render a judgment and impose a sentence in his case because the State allegedly did not prove venue. Although he couches his claim in jurisdictional terms, it is actually a non[-]jurisdictional claim that is precluded because he could have raised it at trial and on appeal, but did not.

31

III.

The appellant further argues that the trial court did not have jurisdiction to render a judgment and impose a sentence in his case because the trial court rather than the circuit clerk administered the oath [to] the petit jury. However, we addressed a similar claim in Fortner v. State, 825 So.2d 876, 880 (Ala. Crim. App. 2001), as follows:

> A trial court's failure to administer the oath to a jury venire, while reversible error, does not rob the trial court of its jurisdiction to render judgment and to impose sentence against a defendant. We therefore narrow our reading of Hamlett, overrule our decision in Nix, and find that a petitioner's claim that the jury venire, or the petit jury, was not properly sworn is not jurisdictional and is waivable.

Also, in Brooks v. State, 845 So.2d 849, 850-52 (Ala.Crim.App. 2002), we held:

> As to Brooks's claim that the trial court lacked jurisdiction to render the judgment or to impose the sentence because, he says, the petit jury was never sworn, we find that Brooks has failed to plead sufficient facts to show that this claim is, in fact, jurisdictional and, therefore, that it, too, is time-barred by Rule 32.2(c).

> It is well settled that [t]he failure to administer the oath to the jury renders the jury's verdict a nullity, . . . and that if the jury or any member thereof was not sworn, it was not the verdict of a jury. However, in Ex parte Deramus, 721 So.2d 242 (Ala. 1998), the Alabama Supreme Court recognized that there is a difference in a

situation in which no oath is given to jurors at all and a situation in which there is merely a defect in the oath. In Deramus, the jury venire was administered an oath before voir dire examination, but the petit jury was not administered an additional oath after it was empaneled. The Alabama Supreme Court characterized this as a defective-oath situation, not a no-oath-at-all situation, and recognized that any defect in the administration of the oath is reversible error only if some objection was taken . . . during the progress of the trial, based on [that] defect[.] Because the appellant had not objected to the defect during trial, the Court held that the appellant's claim that his conviction was void because the petit jury had not been sworn had been waived. Similarly, this Court has held that claims that the venire was not sworn before voir dire examination are waivable, thus implicitly recognizing that such situations are also defective-oath situations and not no-oath-at-all situations. Because only non[-]jurisdictional issues can be waived, it is clear that any claim based on a defect in an oath is non[-]jurisdictional and, therefore, is subject to the procedural bars in Rule 32.2. On the other hand, a claim that no oath was administered at all -- i.e., the jury venire and petit jury were not sworn -- would be a jurisdictional issue because, as noted above, a verdict rendered by jurors who have never been sworn is a nullity.

In this case, Brooks has not alleged that no oath was administered at all; thus, he has not pleaded facts sufficient to show that his issue is jurisdictional. Brooks alleges that the petit jury was not sworn, but he does not allege that the venire was not sworn. In fact, in his brief to this

33

Court, Brooks maintains that the practice in Houston County is to administer the oath to the venire on Monday before trials begin on Tuesday. Brooks's claim is based on an alleged defect in the oath, a non[-]jurisdictional claim subject to the procedural bars in Rule 32.2. Because, as noted above, Brooks's petition was filed long after the expiration of the two-year period of limitations, this claim is time-barred by Rule 32.2(c), and summary denial of this claim was also proper.

Similarly, in this case, the appellant has not alleged that this is a case in which no oath was administered at all. Rather, he alleges that the trial court administered the oath instead of the clerk. Therefore, for the reasons set forth above, the appellant's claim is a non[-]jurisdictional claim that is precluded pursuant to Rule 32.2, Ala.R.Crim.P.

IV.

Finally, the appellant argues that his sentence exceeds the maximum authorized by law or is otherwise not authorized by law because the trial court erroneously sentenced him as a habitual offender. Specifically, he contends that he was not represented by counsel during the prior convictions that were used to enhance his sentence. Initially, we note that the certified copies of the appellant's prior convictions contain indications that he was represented by counsel during each of those proceedings. However, during the evidentiary hearing, the appellant testified that, in his previous cases, he had dismissed his attorneys and represented himself. Even taking the appellant's testimony at the evidentiary hearing as true, it appears that he waived his right to counsel in the previous cases. Therefore, those convictions were properly used to enhance his sentence. Accordingly, his argument is without merit.

For the above-stated reasons, we affirm the circuit court's judgment.

34

(Doc. 8, Exhibit L, at 3 & 7-13 (internal quotation marks and footnotes omitted; most internal citations omitted; footnote added)) Petitioner's application for rehearing (Doc. 8, Exhibit M) was overruled on March 16, 2007 (Doc. 8, Exhibit N); however, his petition for writ of certiorari to the Alabama Supreme Court (Doc. 8, Exhibit O) was granted on May 4, 2004 with respect to the ground alleging failure to prove venue (Doc. 8, Exhibit P). On July 27, 2007, the Alabama Supreme Court affirmed the decision of the Alabama Court of Criminal Appeals. *Ex parte Bell*, ___ So.2d ___, 2007 WL 2152903 (Ala. 2007).

> Bell petitioned this Court for a writ of certiorari. In his petition, he alleged that the holding of the Court of Criminal Appeals that his claim that the State had failed to prove venue was non[-]jurisdictional conflicted with this Court's statement in *Ivey v. State*, 821 So.2d 937, 950 (Ala. 2001), that proof of venue is jurisdictional. We granted the writ to clarify whether an issue of venue in a criminal case is jurisdictional.

> This Court in *Ex parte Culbreth* . . . addressed the difference between a jurisdictional requirement and a venue limitation, stating:

>> Jurisdiction is [a] court's power to decide a case or issue a decree. [] In deciding whether [a petitioner's] claim properly challenges the trial court's subject-matter jurisdiction, we ask only whether the trial court had the [requisite] constitutional and statutory authority[.] Venue, in contrast, addresses [t]he county or other territory over which a trial court has jurisdiction.

35

> Venue can be waived, and any objection to
> improper venue is waived if not timely raised.

[]

In *Ex parte Seymour*, 946 So.2d 536 (Ala. 2006), we recognized the subject-matter jurisdiction of the circuit court, stating:

> Under the Alabama Constitution, a circuit court shall exercise general jurisdiction in all cases except as may be otherwise provided by law. The Alabama Code provides that [t]he circuit court shall have exclusive original jurisdiction of all felony prosecutions[.]

[]

Bell was convicted of the offense of second-degree receiving stolen property, a Class C felony. Thus, the circuit court had subject-matter jurisdiction over Bell's trial.

Venue, on the other hand, does not impact a circuit court's subject-matter jurisdiction; it limits the territory in which a case can be tried. Section 15-2-2, Ala.Code 1975, provides: Unless otherwise provided by law, the venue of all public offenses is in the county in which the offense was committed. Thus, § 15-2-2 identifies in which trial court a case can be prosecuted, but it does not limit the jurisdiction of the trial court. This Court recognizes that there are cases, including *Ivey v. State*, supra, that state that proof of venue is jurisdictional; however, our holdings in *Ex parte Seymour* and *Ex parte Culbreth* implicitly overruled those decisions insofar as their statements regarding the jurisdictional nature of venue are concerned.

Bell's claim that the State did not prove venue is a claim addressing whether the State's evidence satisfied § 15-2-2,

Ala.Code 1975, i.e., whether the State proved that the offense Bell is accused of committing occurred in Washington County so that venue is appropriate there; it is not a claim that impacts the trial court's jurisdiction. Therefore, the Court of Criminal Appeals properly concluded that Bell's claim was non[-]jurisdictional. Additionally, because a challenge to venue is waivable, the Court of Criminal Appeals' application of the procedural bars that the claim could have been but was not raised at trial and that the claim could have been but was not raised on appeal, was proper.

The judgment of the Court of Criminal Appeals is affirmed.

*Id*. at *1-*2 (internal quotation marks omitted; many internal citations omitted).

## CONCLUSIONS OF LAW

### A.   **Procedural Default Doctrine**.

1.    In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the

petitioner fails to meet a state procedural requirement. *Id*. at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S.1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

2.    The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in
> habeas what this Court could not do on direct review; habeas

would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

3.     An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default.  *Id*. at 731, 111 S.Ct. at 2554.  The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.  (citations omitted)  This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.
>
> .     .     .
>
> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted)  In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able

39

> to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

4. In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). In all other cases, the presumption is not applicable. *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts. *Id.* at 299,

40

109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").    Moreover, the presumption "looks through" unexplained orders to the last reasoned decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.  If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at 740, 111 S.Ct., at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place.  Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594.  Also, the presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue."  *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is

41

that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

5.    When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.  The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. (citation omitted).  Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." (citation omitted).  In addition, constitutionally "[i]neffective assistance of counsel . . . is cause."

(citation omitted). Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. (citation omitted). Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." (citation omitted).

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice. (citation omitted).

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

6.   In his answer, respondent asserts that Bell's claim that the trial court lacked venue is procedurally barred since it constitutes a non-jurisdictional issue that could have been raised at trial or on appeal and that his claim pertaining to the failure to properly administer the oath is barred under those same procedural rules. (Doc. 8, at 19)

7.   It is clear to the undersigned that Bell has procedurally defaulted his venue claim because he did not raise it at trial or on appeal; however, it is not as clear that Bell has defaulted his claim related to the oath administered

to the petit jury because the last Alabama court to consider the issue (the Alabama Court of Criminal Appeals) did not specifically identify the procedural bar (or bars) it was relying upon under Rule 32.2 in declining to address the merits of this issue. Accordingly, this Court simply considers whether the trial court correctly determined that this claim has no merit.

8.     Turning to the issue of cause and prejudice, even assuming cause for the petitioner's procedural default of his venue claim, petitioner would not be entitled to a merits-review of this claim by this Court because he cannot establish prejudice. Specifically, Bell has not established, through citation to applicable case law and the record, that Alabama's appellate courts would have granted him relief with respect to this claim had it been properly preserved for their review. This is because venue was clearly established in this case. As noted by the Alabama Supreme Court, venue for all public offenses is proper in the county in which the offense was committed. Patrick Thomas testified that the stereo equipment was stolen from his church's revival tent in Washington County, Alabama (*see* T.T. 50-52), and Timothy Lofton testified that in August of 2002, Bell showed him stereo equipment in some woods off River Road in Washington County, Alabama (*see* T.T. 59).[8]

_____

[8]     Petitioner's own Rule 32 testimony underscores Thomas' trial testimony, Bell stating that he the equipment was on his very own property in Washington County and that he

44

Therefore, venue was proper in Washington County, Alabama.

9.      The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the *Murray v. Carrier* standard. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Bell to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Bell has not come forward with any evidence which establishes his actual innocence and thereby undermines his conviction for second-degree receiving stolen property. His insistence that he is actually guilty of theft of property, rather than receiving stolen property, does nothing

---

stole the equipment.

to help his cause given the nature of the State's evidence which established petitioner's guilt of receiving stolen property. *See Mills v. State*, 581 So.2d 1126, 1127 & 1128 (Ala.Crim.App. 1987) ("Where the evidence is undisputed that the appellant committed the theft, he cannot be convicted of receiving the same stolen property from that theft. . . . The only evidence in the case *sub judice* implicating the appellant in the actual burglary was the testimony of the State's rebuttal witness, Jackie Neal Hill. The principle that someone cannot be convicted of receiving stolen property when the evidence proves that he participated in the theft 'is inapplicable where, as here, the evidence does *not* show that the appellant participated in the theft. "That he may have done so cannot be reasonably doubted, but there is no definite evidence to that effect."' The State's evidence sufficiently proved that the appellant was guilty of receiving stolen goods."). Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

  **B.** **Merits Discussion of Collateral Petition Claims**.

  10. Bell filed his petition for writ of habeas corpus relief in this Court on or about August 27, 2007, and therefore, his case clearly is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495,

46

1518, 146 L.Ed.2d 389 (2000); *Bottoson v. Moore*, 234 F.3d 526, 530 (11th

Cir. 2000), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001).

As amended, § 2254 now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[9]

28 U.S.C. § 2254(d)(1) & (2) (footnote added).  Moreover, the Act, as

amended, presumes as correct all determinations of factual issues made by a

State court and places the burden upon the petitioner of rebutting such a

presumption of correctness by clear and convincing evidence.  28 U.S.C. §

2254(e).

---

[9]       Based upon the facts as found by the Alabama courts in their decisions, it is clear that no argument can be made that the decisions of any of those courts was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts. More to the point, since this Court must presume as correct the determinations of all factual issues made by the Alabama courts, petitioner simply cannot rebut that presumption of correctness by clear and convincing evidence. The state courts' findings are based upon what a reasonable jury could have found the evidence to be.

11.     In *Williams v. Taylor, supra*, the Supreme Court held that

§ 2254(d)(1) places a new constraint on the power of a federal habeas court to

grant a state prisoner's application for a writ of habeas corpus with respect to

claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ

may issue only if one of the following two conditions is satisfied— the state-

court adjudication resulted in a decision that (1) "was contrary to . . . clearly

established Federal law, as determined by the Supreme Court of the United

States," or (2) "involved an unreasonable application of . . . clearly established

Federal law, as determined by the Supreme Court of the United States."  Under

the "contrary to" clause, a federal habeas court may grant the writ if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on

a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts.  Under the

"unreasonable application" clause, a federal habeas court may grant the writ

if the state court identifies the correct governing legal principle from the

Supreme Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case. *Id.* at 412-413, 120 S.Ct. at 1523; *see Bottoson, supra*,

234 F.3d at 531 ("In addition, a state court decision involves an unreasonable

application of Supreme Court precedent 'if the state court either unreasonably

extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'").

12.    In this case, the Alabama courts reached the merits of petitioner's ineffective assistance of trial and appellate counsel claims and his claim that his sentence exceeds the maximum authorized by law. Bell cannot establish his entitlement to relief under § 2254(d)(1) & (d)(2) with respect to either of these issues. In this regard the undersigned notes generally that petitioner has not and cannot show, under the "contrary to" clause, that the Alabama courts, arrived at any conclusions opposite to those reached by the Supreme Court of the United States on any question of law or decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts.  Moreover, as indicated above, under the "unreasonable application" clause, petitioner has not and cannot establish that the Alabama courts, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case. Here, the Alabama Court of Criminal Appeals, in its decision on collateral review, specifically recognized the applicability of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to

petitioner's claims of ineffective assistance of trial and appellate counsel,[10] and reasonably applied the principles outlined in that case to the facts of petitioner's case in finding that counsel did not provided constitutionally ineffective assistance at trial or on appeal.

13.    Turning to the remaining ground of the instant petition that was addressed by the Alabama Court of Criminal Appeals on collateral review, specifically Bell's claim that his sentence exceeds the maximum authorized by law, the undersigned would note that petitioner makes no argument that there is any federal law applicable to this claim which establishes that his sentence exceeds the maximum authorized by law.[11]   More importantly, petitioner's claim is baseless under Alabama law. In this case, petitioner admitted during

_____

[10]    While the trial court, in its decision, did not specifically cite to *Strickland v. Washington*, it is clear from a reading of the decision that the court was well aware of the guiding principles set down by the Supreme Court in the *Strickland* case in reaching its decision on the ineffective assistance of counsel claims raised. *Cf. Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) ("Avoiding these pitfalls does not require citation to our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

[11]    Specifically, petitioner makes no *Apprendi* claim. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This is no doubt because the Supreme Court in *Apprendi,* and later in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), specifically exempted from jury consideration and determination the "fact of a prior conviction[.]" *Blakely,* 542 U.S. at 301, 124 S.Ct. at 2536; *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362-2363 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

his trial that he had two prior felony convictions and the evidence submitted by the State during sentencing tended to establish that Bell had three prior felony convictions prior to being convicted of the instant offense of receiving stolen property in the second degree, a Class C felony. *See* Ala.Code § 13A-8-18(b) ("Receiving stolen property in the second degree is a Class C felony."). Petitioner's twenty-five year is well within the range of punishment for an individual with either two or three prior felony convictions who thereafter commits a Class C felony. *Compare* Ala.Code § 13A-5-9(b)(1) ("In all cases when it is shown that a criminal defendant has been previously convicted of any two felonies and after such convictions has committed another felony, he or she must be punished as follows: On conviction of a Class C felony, he or she must be punished for a Class A felony[12][.]") *with* Ala.Code § 13A-5-9(c)(1) ("In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such conviction has committed another felony, he or she must be punished as follows: On conviction of a Class C felony, he or she must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.").

---

[12]     "Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations: [] For a Class A felony, for life or not more than 99 years or less than 10 years." Ala.Code § 13A-5-6(a)(1).

Therefore, the undersigned simply cannot find that the state court adjudication was contrary to any applicable federal law nor can it be found that the state court unreasonably applied any relevant precedent.[13] Moreover, it is not debatable among reasonable jurists that the result of which petitioner complains is incorrect. Stated differently, it is not debatable among reasonable jurists that the appellate court's rejection of petitioner's excessive sentence argument is inherently incorrect.[14]

---

[13]     To the extent it is petitioner's argument that un-counseled guilty plea convictions were improperly used to enhance his sentence, this Court merely reiterates the supported finding of the Alabama courts that the evidence of record reflects that petitioner was represented by counsel with respect to those prior convictions (Doc. 8, Exhibit A, Attachments to State's Amended Notice of Prior Felony Convictions). *See Terry v. State*, 719 So.2d 263, 265 (Ala.Crim.App. 1997) ("[A]n uncounseled felony conviction may not be used to enhance punishment for a subsequent offense . . . unless it is shown that the accused waived the right to counsel[.]").

[14]     Petitioner's argument that it was constitutional error for the trial court to administer the oath to the petit jury has no merit. As pointed out by the trial court in denying Bell's Rule 32 petition, Rule 18.5 of the Alabama Rules of Criminal Procedure specifically allows the trial court to administer the oath to the petit jury. Ala.R.Crim.P. 18.5(a) ("The court shall either remind the jurors that they are still under oath, or may give the jurors the following oath: 'You do solemnly swear, or affirm, that you will well and truly try all issues joined between the defendant[] and the State of Alabama and render a true verdict thereon according to the law and evidence, so help you God.'"); *see also* Ala.R.Crim.P. 12.1(c)(2) ("On the opening day of the term, or on such other day as the venire shall have been summoned to appear, the judge presiding shall proceed to organize the court, by: Administering or causing to be administered to the jurors the following oath as required by law: 'Do you and each of you solemnly swear or affirm that you will well and truly answer all questions propounded to you touching your general qualifications as a juror, or qualifications as a grand juror or petit juror, and that you will well and truly try all issues and execute all writs of inquiry submitted to you and true verdicts render according to the law and evidence, so help you God?'"). It was proper, therefore, for the trial judge to administer the oath to the petit jury, as opposed to requiring the clerk of court to perform this function as petitioner contends.

## <u>CONCLUSION</u>

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for habeas corpus relief should be denied.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 24th day of January, 2008.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)©); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days_after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The_objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

  _s/WILLIAM E. CASSADY_____
 UNITED STATES MAGISTRATE JUDGE